# CHARLESTON.

## THE CITY OF PARKERSBURG v. KANAWHA TRACTION & ELECTRIC CO.

Submitted January 20, 1920.    Decided January 27, 1920.

1.  STREET RAILROADS—*Municipal Franchise Construed to Entitle City to Base its Percentage on Gross Receipts Without Abatement for Lines Beyond its Limits.*

    A provision in a franchise granted to a street railway company by a city providing for the payment of a certain percentage of the gross revenues of such street railway company from all of its lines operated wholly within the corporate limits, and certain other specified lines which are partly within and partly without the corporate limits, properly construed, entitles the city to receive the percentage provided in the contract upon the entire gross receipts from such lines without any abatement therefrom because of that part of the specified lines which may lie without the corporate limits. (p. 394).

2.   SAME—*Municipal Franchise Construed as Giving City no Right to Collect Percentage of Receipts Earned Before Time Provided in Contract.*

Where a franchise is granted to a street railway company authorizing it to use certain of the streets of the city in consideration of the payment by the railway company of a certain percentage of its gross receipts, and said franchise provides that such compensation shall be based upon such gross receipts beginning at a certain time in the future, the city will not be entitled to collect such fixed percentage of the receipts of said company earned before the time provided in the contract at which such compensation shall begin to be caluculated. (p. 396).

Appeal from Circuit Court, Wood County.

Suit by the City of Parkersburg against the Kanawha Traction & Electric Company involving the construction of paragraphs of defendant's franchise. From the decree, the defendant appeals.

*Modified and affirmed.*

*Van Winkle & Ambler,* for appellant.
*McCluer & McCluer,* for appellee.

RITZ, JUDGE:

On the 6th day of August, 1913, the city of Parkersburg granted to the Parkersburg, Marietta and Interurban Railway Company, the predecessor of the defendant herein, a certain franchise which was by the said railway company accepted on the following day. This franchise by its terms granted certain rights to the railway company and imposed upon it certain obligations in consideration of the grant of those rights. The controversy here involves the construction of paragraph g of § 11, which is as follows:

"In addition to such sums as are now or hereafter may be required by law to be paid to the city by said railway company, the railway company, its successors and assigns, shall pay to the City annually, on the first day of January in each and every year commencing January 1st, 1914, during the life of this and the franchises held by said railway company from the City, directly or indirectly, for the use of the streets, which are now, or which may hereafter be occupied by said railway company, the following percentage of its gross receipts from the lines it,

its successors and assigns, operates wholly within the corporate limits as they now exist, and also including what is known as the South Side Line, the North End Line, and the Beechwood Line, and also from such other lines of the said railway company that may hereafter be operated within the said City limits, as they now exist or may exist at any time during the life of said franchises, (it being understood that receipts from the railway company's Interurban line between the City of Parkersburg and Williamstown, are excluded), as follows: 1 per cent annually for five (5) years from January 1, 1914; 2 per cent annually for the next five (5) years; 2 1-2 per cent annually for the next five (5) years; and 3 per cent thereafter until this franchise and the other said franchises expire. Said percentages shall be calculated upon the gross receipts from the next preceding year's business."

It will be observed that this paragraph provides for the payment to the city by the traction company of a certain percentage of its gross receipts from certain lines in consideration of the grant of the right to use its streets, as therein provided. Such percentage is to be calculated upon the gross receipts of the traction company from the lines it, its successors and assigns, operate, wholly within the corporate limits as they now exist, and also including what is known as the South Side Line, the North End Line and the Beechwood Line. In order to understand the controversy it is necessary to state that the defendant company operates what is known as the Inner Loop and Outer Loop, both of which are wholly within the corporate limits, and there is no contention but that the compensation required to be paid is to be based upon the total receipts from these lines. In addition to this the company operates what is known as the South Side Line, the North End Line and the Beechwood Line, each of which is partly within and partly without the city limits. It also operates an interurban line extending from the City of Parkersburg to the City of Marietta in the state of Ohio which, it will be observed from the provision above quoted, is excluded from the calculation. The traction company's contention is that as to the North End Line, the South Side Line, and the Beechwood Line, the receipts therefrom should be divided in the proportion that the mileage of each of said lines within

the city and without the city bears to the total mileage, and the city's percentage calculated only upon that part thus determined to have been earned within the city, while the city's contention is that by the language of the franchise it is entitled to collect the percentage stipulated upon the total receipts from these lines, regardless of whether they are within or without the city limits. The defendant cites some authorities to the effect that where a franchise provides for the payment of a stipulated percentage of the receipts of a street railway company in consideration of a grant to it of the right to use the city streets, it will be held that it was the intention to limit such compensation to a percentage of the receipts produced from the lines operated under the grant, and in case such lines are operated in connection with others such receipts will be determined by dividing the total receipts of the company between the lines operated within the city and without the city upon the basis of the miles of track operated within and without, and the city's percentage calculated upon the receipts thus determined to have been earned by the mileage operated within the city. Those decisions would be pertinent if the franchise simply granted to the defendant, or its predecessor, the use of the city streets in consideration of the payment of a certain percentage of its receipts. It might then be held under the authority of the decisions cited by the defendant that it was the intention of the council in granting the franchise to include only the receipts from tracks operated within the city limits. We cannot construe the language used in this franchise as having that meaning. It will be observed that the franchise provides for the payment of the stipulated percentages upon the lines operated wholly within the city limits. If it was the intention to limit the compensation to a percentage of the receipts from lines wholly within the city limits, no further provision need have been made, but the contract goes further and says that in addition to the lines operated within the city limits there shall be paid the same percentage upon the gross receipts of the other mentioned lines, expressing in our view a clear intention to include not only a percentage of the gross revenue derived from the operation of tracks within the city, but a percentage of the gross revenue of the other lines mentioned, whether en-

tirely within the city or not. To give the contract the construction contended for by the defendant would make a large part of the language meaningless, and we are not to assume that the parties when they entered into this contract did not intend that all of the language used by them was to be given its ordinary meaning. It is contended that it is not to be assumed that the city intended to collect revenue from earnings of the company derived from lines outside of the city. This argument is without force, for the reason that this is not revenue collected for the use of streets or roads outside the city, but the consideration for this payment is the use of the city's streets granted by the franchise, and there is no reason why the amount of the compensation to be paid for the use of these streets cannot be measured by any standard to which the parties may agree. They agreed that the amount of this compensation should be measured by a certain percentage of the receipts from the lines wholly within the city, and certain other lines partly within and partly without the city. No reason is perceived why this could not be done. It furnished a reasonably accurate and convenient means of arriving at the compensation to be paid. There is no inhibition against the parties setting up such a standard for measuring the compensation. They could have fixed it as a certain percentage of the receipts of railway lines entirely without the city, and entirely dissociated from either of the parties if they had found such to be a convenient method of measuring what was to be paid by the one party to the other for the use of its public streets. We think the Circuit Court was clearly right in the interpretation given to this language of the contract.

It will be observed, however, that the contract provides that the compensation shall be one per cent annually for five years, from January 1, 1914; two per cent annually for the second five years; two and one-half per cent annually for the next five years; and three per cent thereafter until the expiration of the franchise. As before stated, the franchise was accepted on the 7th of August, 1916. The circuit court in its decree construed this franchise to require the payment of one per cent of the gross receipts to begin with the 7th of August, 1913, and this it is contended by the defendant was error, its contention

being that the language provides that the compensation shall not begin until the first of January, 1914. It seems to us that this is the clear language of the contract. It says in so many words that the one per cent annually shall run for five years from the first of January, 1914. There is absolutely no authority in the contract for charging any percentage prior to that time. The contract does not specify that anything is to be paid before that, but it does clearly say that the compensation for the grant of the franchise, so far as it is made up of a percentage of the gross receipts, shall begin from the first of January, 1914. This being true, we think it was error to decree against the company for one per cent of its gross receipts prior to January 1, 1914. It appears from the record that the amount of the gross receipts for the period beginning with the 6th of August, 1913, and ending with the 31st of December, 1914, was $175,693.16. It further appears that the gross receipts for the year ending December 31, 1914, was $122,227.24. The court in its decree allowed one per cent on the $175,693.16, or $1,756.93, when it should have allowed one per cent on $122,227.24, or $1,222.27. Deducting from this the amount paid by the company for that period, to-wit, $1,011.20, would leave a balance due by the company to the city for the year ending December 31, 1914, of $211.07 instead of $745.73, as decreed; and adding to this interest to the date of the court's decree, January 27, 1919, would make a total which should have been decreed of $262.78 instead of $927.76.

We will correct the decree entered by the circuit court in this regard, and as thus modified affirm the same with costs to the appellant.

*Modified and affirmed.*